**E-FILED on _____**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff/Respondent,<br><br>    v.<br><br>PIUS AILEMEN,<br><br>        Defendant/Petitioner. | No. C-04-0823 RMW<br>Related to: CR-94-0003<br><br>ORDER DENYING PETITIONER'S 28 U.S.C.<br>§ 2255 MOTION, DENYING PETITIONER'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DENYING PETITIONER'S MOTION<br>FOR REFERRAL<br><br>**[Re Docket Nos. 1, 26, 43, 47, 48 and 49]** |

Petitioner Pius Ailemen ("petitioner" or "defendant") brings this action pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his federal criminal conviction and sentence. Petitioner also filed a motion for partial summary judgment, to which the United States government ("respondent") objected on the grounds that the motion violated this court's August 15, 2007 order. Most recently, petitioner filed a motion requesting that this court grant a prior motion he filed requesting referral of the case to Magistrate Judge Brazil.

## I. BACKGROUND

### A. Offense Conduct

According to respondent, petitioner was involved in both international and domestic drug enterprises. United States' Answer to Section 2255 Petition ("Answer") at 2-7. Petitioner engaged the services of a few young women to help him transport drugs and drug-related money in between

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  San Francisco and London, Germany, Los Angeles, and Washington D.C. *Id.* Petitioner's

2  operations were finally uncovered when, unwittingly, he entered into drug deals with an undercover

3  officer. *Id.* at 7-8. On December 15, 1993, the police executed an arrest warrant for petitioner and a

4  search warrant for his apartment, where they discovered $4,900 in cash. *Id.* at 8.

5       **B.    Procedural History**

6       On January 22, 1998, a grand jury returned a five-count second superseding indictment

7  charging petitioner with: (1) conspiracy to distribute heroin and cocaine; (2) engaging in a

8  continuing criminal enterprise; (3) and three counts of distribution or aiding and abetting distribution

9  of heroin. Answer at 2. A jury trial before the Honorable Charles R. Breyer began on February 8,

10 1999. *Id.* On April 5, 1999, petitioner was convicted of conspiracy to distribute heroin; engaging in

11 a continuing criminal enterprise; and one count of distribution of heroin. *Id.* At sentencing on July

12 20, 1999 Judge Breyer vacated two of the counts pursuant to *Rutledge v. United States,* 517 U.S. 292

13 (1966) (precluding sentencing on counts that are based upon the same conduct) and sentenced

14 petitioner to 292 months in federal prison, followed by five years of supervised release, for engaging

15 in a continuing criminal enterprise. Answer at 2, 10. The judgment and commitment was filed on

16 August 2, 1999. Docket # 2001.

17      Petitioner appealed to the Ninth Circuit, which affirmed his conviction on July 29, 2002.

18 *United States v. Ailemen*, 43 Fed.Appx. 77 (9th Cir. 2002). The Ninth Circuit held, *inter alia*, that:

19 (1) petitioner did not receive ineffective assistance of counsel; (2) the trial court did not err when it

20 ruled that the government could have impeached petitioner with evidence from suppressed wiretaps,

21 such that petitioner was not prejudiced in his decision not to testify, and in fact waived the issue by

22 choosing not to testify; and (3) the evidence did not support a claim of judicial bias. *Id.* Petitioner

23 sought a writ of certiorari from the United States Supreme Court, but his application was denied on

24 February 24, 2003. Answer at 11.

25      **II. PETITIONER'S MOTION TO VACATE PURSUANT TO § 2255**

26      On March 1, 2004, petitioner filed the current Motion Pursuant to 28 U.S.C. § 2255 to

27 Vacate Conviction. In his papers, petitioner states that his federal trial was a "travesty."

28 Memorandum of Law in Support of Motion Pursuant to 28 U.S.C. § 2255 to Vacate Conviction at 7.

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB          2

Case 5:04-cv-00823-RMW Document 51 Filed 12/30/2008 Page 3 of 27

He asserts that his innocence was not the focus of the trial. *Id.* at 2. Instead, the trial focused on "the battle between his counsel and Judge Breyer and the battle between the two attorney's [sic] representing him." *Id.* According to petitioner, neither of his attorneys was prepared to present the case. *Id.* For example, the attorneys "failed to examine important evidence . . . until several weeks after the trial began." *Id.* Additionally, "[petitioner's] feuding [sic] attorneys were in such disarray and were so unprepared that they were not able to prepare the [petitioner] to testify on his own behalf . . . ." *Id.* at 7.

Petitioner alleges that as a result of the lack of preparation of his counsel, there was open hostility between them. *Id.* at 3. Petitioner's attorneys "were literally at each others throats throughout the trial." *Id.* at 2. The result was that the jurors were seen "shaking their heads in disgust at the conduct of the attorneys." *Id.*

Moreover, petitioner's attorneys "were constantly at odds with and battling with the trial judge." *Id.* "The hostility between the attorneys and the judge was so great that it poisoned completely the adversarial process that should have provided a forum for the jury to examine the facts and reach the truth." *Id.* at 3. Petitioner argues that the trial judge was extremely biased in favor of respondent in his rulings, comments, and conduct; permitted *ex parte* contact by respondent; and made "efforts to prevent the derailment of the [respondent's] case. . . ." *Id.* at 4-5.

In sum, petitioner argues that:

> [t]he combination of the attorneys being unprepared, the intense internal strife between counsel and the court, and the unrelenting virtual warfare between counsel and the court, created a situation where [petitioner] was, in effect, unrepresented by counsel. It was he who paid the price. . . . The results were devastating for [petitioner], because this distrust caused the court to disbelieve the declarations and offers of proof submitted by defense counsel with respect to [petitioner's] defense that he was framed. The end result was that evidentiary issues were decided on the basis of that distrust not on the merits of the issue.

*Id.* at 3-4.

Petitioner asserts the following five claims in support of his original § 2255 motion: (1) he was deprived of his constitutional right to testify; (2) he was improperly convicted of violating 21 U.S.C. § 848 because the jury was improperly instructed and his lawyers failed to argue for appropriate instructions; (3) he received ineffective assistance of appellate counsel; (4) he received

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  ineffective assistance of trial counsel; and (5) prosecutorial misconduct.  Further, in a supplement to

2  petitioner's § 2255 motion filed February 4, 2005, petitioner asserts that flagrant and excessive

3  judicial bias and misconduct evident in his trial precludes any confidence in the findings of the jury

4  or the rulings of the trial judge and that his trial counsel inappropriately withdrew a post-trial motion

5  regarding prosecutorial misconduct.  The court analyzes below each of petitioner's claims in the

6  order set forth in petitioner's Memorandum of Law in Support of Motion Pursuant to 28 U.S.C. §

7  2255 to Vacate Conviction ("P's Memo."), Supplement to Defendant's Pending § 2255 Motion ("P's

8  Supp."), and Amendment to Defendant's Pending § 2255 Motion ("P's Amend.").

9        After respondent filed an answer to the petition on July 21, 2006, petitioner submitted a

10  Reply to Government's Answer on September 4, 2007 (amended on September 13, 2007) as well as

11  a Motion for Partial Summary Judgment ("SJ Mot."), in which he claims that respondent failed to

12  answer or contest various factual assertions included in petitioner's original motion and, as a result,

13  petitioner's motion should be decided as a matter of law.

14        Finally, on June 30, 2008, petitioner filed a Motion Requesting the Court to Grant

15  Defendant's October 2005 Motion for Referral ("Ref. Mot.") asking that this court refer his § 2255

16  motion to Magistrate Judge Brazil, citing Judge Brazil's "singular familiarity with the unique facts

17  and issues raised in the § 2255 [motion]. . . ."  Ref. Mot. at 1.

18  ### III.  ANALYSIS

19  ### A.  Claim I: Defendant Was Deprived of Constitutional Right to Testify

20        A defendant in a criminal case has the constitutional right to testify on his own behalf.  *Rock*

21  *v. Arkansas*, 483 U.S. 44, 52 (1987) ("Even more fundamental to a personal defense than the right of

22  self-representation . . .  is an accused's right to present his own version of events in his own words.

23  A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may

24  not present himself as a witness.").  "Only the defendant may waive this right, not his counsel, and it

25  must be knowing and voluntary."  *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002) (citing

26  *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)); *see United States v. Joelson,* 7 F.3d 174, 177

27  (9th Cir. 1993).

28

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB     4

United States District Court
For the Northern District of California

1    A claim by defendant that his counsel unfairly denied him the right to testify is analyzed

2    under the ineffective assistance of counsel standard of *Strickland v. Washington*, 466 U.S. 668, 687

3    (1984). *Medley v. Runnels*, 506 F.3d 857, 861 (9th Cir. 2007) (en banc), *cert. denied*, 128 S. Ct.

4    1878 (2008). However, where a defendant claims that the court has denied him his right to testify, a

5    different standard applies. *Mullins*, 315 F.3d at 452. Although the court has found no case directly

6    on point, such interference would presumably constitute a violation of substantive due process and

7    require no showing of prejudice to obtain relief. Petitioner claims that both his counsel and the court

8    prevented him from testifying.[1]

9    Noting that an ineffective assistance of counsel claim is cognizable as a claim of denial of the

10   Sixth Amendment right to counsel, which guarantees not only assistance of counsel, but *effective*

11   assistance of counsel, the Supreme Court set forth a two-prong analysis for evaluating an ineffective

12   assistance of counsel claim. *Strickland*, 466 U.S. at 687 (emphasis added). First, petitioner must

13   show that his counsel's performance was deficient. *Id.* This requires showing that defense counsel

14   made errors so serious that representation fell below an objective standard of reasonableness. *Id.*

15   The relevant inquiry is not what defense counsel could have done, but rather whether the choices

16   made by defense counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.

17   1998).

18   Second, petitioner must show that the deficient performance prejudiced the defense so as to

19   deprive him of a fair trial. *Strickland*, 466 U.S. at 692. Merely showing that the defense was

20   impaired is insufficient. *Id.* at 693. The petitioner must show that "there is a reasonable probability

21   that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

22

23   [1] As a side note, respondent argues that petitioner has procedurally defaulted on this claim because

24   he failed to raise it on appeal. However, in light of *Massaro v. United States*, 538 U.S. 500 (2003), the court finds this argument unpersuasive. Instructively, in *Massaro*, the Supreme Court held that

25   "an ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." 538 U.S. at 505. While

26   recognizing that "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," *id.* at 504, the Supreme Court

27   found that the general rule was merely "a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of the judgment. . . . [R]equiring

28   a criminal defendant to bring ineffective-assistance-of-counsel claims on direct appeal does not promote these objectives." *Id.*

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB          5

*Id.* at 694. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

Petitioner alleges that, during his federal trial, he had always wanted to, and expected to, testify on his own behalf. P's Memo. at 8. Petitioner submits his declaration, in which he states, "despite my insistence that I be called to testify on my own behalf, I was prevented from testifying by my appointed counsel, Mr. Rosanthal [sic] and Mr. Bloom." Ex. B at 1. Moreover, petitioner's defense counsel was fully aware of his intent to testify. P's Memo. at 8-9. However, his attorneys were so ill-prepared and so embroiled in their own conflict that "they never found the time to even begin to prepare [petitioner] to testify." *Id.* at 9. Petitioner also attaches the declaration of Mr. Bloom, in which he states, "I was informed from the outset by my client, Pius Ailemen, that he wanted to testify. . . . Nevertheless . . . the defense was in such disarray . . . that co-counsel and I refused to call [petitioner] as a witness." Ex. A at 1.

Petitioner claims that he received clear messages from the judge that "the court would not intervene and would not do anything to insure that [petitioner] was afforded his constitutional right to a fair trial, including his right to testify in his own behalf. . . ." P's Memo. at 10-11. Petitioner also states that his attorneys' failure to prepare him to take the stand overrode his decision to testify and that the denial of this right severely prejudiced him. *Id.* at 13-14. He claims that his testimony was extremely important because he was the only one with knowledge to contradict specific testimony and evidence introduced against him. *Id.* at 11-13.

It is not clear whether petitioner did not testify because his attorneys refused to let him because they were "in disarray" or because the defense was fearful of the effect of what he understood the court would allow to be explored on cross-examination.[2] However, assuming

---

[2] It appears that petitioner and his counsel actually decided that petitioner should not testify because they feared that the trial judge would allow certain harmful evidence to be used in cross-examination. *See, for e.g.,* Tr. 6471:12-24:

> Mr. Rosenthal: I just wanted the record to clearly reflect that, you know, Mr. Ailemen would have testified to – that, you know, Mr. Ailemen obviously would have testified to the – to – statements I made in my opening – in my opening statement, to the extent that they were within his personal knowledge, that he wold have testified – he would have certainly testified and contradicted Carl Estelle's – un –un – uninterpretation [sic] of the telephone call, and I think , your honor – I mean, I

United States District Court
For the Northern District of California

1  petitioner failed to testify because his counsel failed to call him as a witness despite his request that

2  they do so, counsel's waiver of a defendant's right to testify constitutes deficient performance. *See*

3  *Mullins*, 315 F.3d at 453 ("It cannot be permissible trial strategy, regardless of its merits otherwise,

4  for counsel to override the ultimate decision of a defendant to testify contrary to his advice.");

5  *Brown v. Artuz*, 124 F.3d 73, 80 (2d Cir. 1997)("[I]f defense counsel refused to accept the

6  defendant's decision to testify and would not call him to the stand, counsel would have acted

7  unethically to prevent the defendant from exercising his fundamental constitutional right to testify;

8  *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992)("Because it is primarily the

9  responsibility of defense counsel to advise the defendant of his right to testify and thereby to ensure

10  that the right is protected, we believe the appropriate vehicle for claims that the defendant's right to

11  testify was violated by defense counsel is a claim of ineffective assistance of counsel under

12  *Strickland v. Washington . . . .").*

13         However, petitioner has a second hurdle to overcome in establishing ineffective assistance of

14  counsel. He must show he was prejudiced. He must show a "reasonable probability" that had he

15  been allowed to testify, "the result of the proceeding would have been different." *Strickland*, 466

16  U.S. at 694. Although petitioner cites in his declaration a laundry list of evidence to which he would

17  have testified (P's Memo. at Ex. B), it is insufficient to persuasively show that it would have

18  overcome respondent's case. Petitioner's evidence was based on the theory that he had been framed.

19  While petitioner claims that he did not have the opportunity to take the stand and make this

20  argument himself, his attorney, Mr. Bloom, did. As a result, the jury was aware of petitioner's

21  theory and, as rational fact finders, were able to weigh this theory against the evidence presented by

22  respondent. This court cannot say that had petitioner testified, there is a reasonable probability that

23  he would have convinced the jury of his theory and swayed the outcome. In fact, his testimony likely

24

25         just think we have to --
        The court: Why didn't he?
26         Mr. Rosenthal: Huh? Because you state that you were going to impeach him with the
   wiretap.
27         The court: Oh no. I never . . . .

28  *See Ailemen*, 43 Fed.Appx. at 84.

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB          7

**United States District Court**
For the Northern District of California

1  would have weakened his defense as otherwise inadmissible evidence adverse to petitioner would

2  likely have been presented in cross-examination.

3       Finally, petitioner contends that the court, as well as the attorneys, effectively denied him his

4  right to testify when it failed to make any effort to help him secure that right. Although claims of

5  court interference should probably be treated as structural error (*see Mullins*, 315 F.3d at 452 (citing

6  *Brown*, 217 F.3d at 258-59; *Willis* 273 F.3d at 598 )), petitioner provides no evidence that the trial

7  court thwarted his efforts to testify. This court cannot find that the trial court unconstitutionally

8  denied defendant the right to testify based solely upon defendant's allegation or subjective belief.

9       **B.     Claim II: Defendant Was Improperly Convicted of Violating 21 U.S.C. § 848**

10       Petitioner asserts in his Claim II that he was improperly convicted of engaging in a

11  continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848.

12       In order to prove a continuing criminal enterprise, the government must show that (1)
the defendant's conduct constituted a felony violation of federal narcotics law; (2) the
13       described conduct occurred as part of a continuing series of violations; (3) the
defendant undertook the activity in concert with five or more persons; (4) the
14       defendant acted as the organizer, supervisor or manager of the criminal enterprise;
and (5) the defendant obtained substantial income or resources from the purported
15       enterprise. *United States v. Sterling*, 742 F.2d 521, 525 (9th Cir. 1984).

16  *United States v. Garcia*, 988 F.2d 965, 967 (9th Cir. 1993). Petitioner's claims relate to elements (2)

17  - (4). Specifically, he asserts that the government failed to prove beyond a reasonable doubt that he

18  engaged in three or more specific narcotics offenses, that the jury was not adequately instructed that

19  it had to unanimously agree on the three predicate offenses, and that the jury was not instructed that

20  it had to unanimously identify the five or more supervisees involved in each predicate offense.

21       These claims were disposed of adversely to petitioner on direct appeal. *United States v.*

22  *Ailemen*, 43 Fed.Appx. 77, 84-85 (9th Cir. 2002). Although principles of res judicata do not bar

23  petitioner from relitigating under § 2255 issues raised in the appeal, a district court may refuse to

24  entertain a repetitive petition absent a showing of manifest injustice or a change in law. *Polizzi v.*

25  *United States*, 550 F.2d 1133, 1135 (9th Cir. 1976). Petitioner has made no showing of a manifest

26  injustice or change in the law. Therefore, the court exercises its discretion and declines to

27  reconsider these issues except as a preface to petitioner's ineffective assistance of counsel claims.

28

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB          8

United States District Court
For the Northern District of California

1

### 1. Three or More Narcotic Transactions

2     The Ninth Circuit has interpreted a "'continuing series' as consisting of three or more federal

3 narcotics violations." *Sterling*, 742 F.2d at 526. Petitioner argues that he was only found guilty of

4 two predicate offenses: one count of conspiracy to distribute heroin and cocaine[3] and one count of

5 distributing, or aiding and abetting the distribution of, heroin and cocaine. Therefore, the

6 requirement of three predicate offenses was not met. But petitioner overlooks that a jury may rely

7 on uncharged offenses to meet the predicate offenses requirement. *Id.* ("[T]here is no legal

8 requirement that the violations which make up the continuing series be specifically listed in the

9 indictment."). The evidence was sufficient to show narcotics violations that were not expressly set

10 forth in the indictment. Petitioner appears to acknowledge that such evidence was offered but

11 submits that no narcotics were seized from these events and thus the proof that they were narcotics

12 transactions did not meet the beyond a reasonable doubt standard. P's Memo. at 17-18. However,

13 the evidence supported the conclusion that petitioner was involved in several international drug

14 transactions.

15

### 2. Adequacy of Instruction on Requirement that Jury Unanimously Agree on Predicate Offenses

16

17     Petitioner argues that the court failed to instruct the jury that it had to unanimously agree on

18 the three predicate offenses giving rise to a CCE violation. Petitioner relies on *Richardson v. United*

19 *States,* 526 U.S. 813 (1999) and *United States v. Garcia-Rivera*, 353 F.3d 788 (9th Cir. 2003).

20 Petitioner is correct that the jury is required to unanimously agree on the three predicate offenses. In

21 *Richardson*, the Supreme Court held that jury in a CCE case must unanimously agree not only that

22 defendant committed some "continuing series of violations," but also on which specific "violations"

23 made up that "continuing series." *Id.* at 818-824. The court's instruction here was adequate to insure

24 that the jury unanimously agreed on the specific predicate offenses. The pertinent part of its

25 instructions in regard to the continuing criminal enterprise count stated, "Second, the offense was a

26 part of a series of three or more offenses committed by the defendant over a definite period of time,

27

---

28  [3]  A felony conspiracy offense may serve as a predicate offense. *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1571 (9th Cir. 1989).

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB            9

United States District Court
For the Northern District of California

*with all of you agreeing on at least three offenses that were committed by the defendant.*" Tr. 6282:25-6283:3 (emphasis added). *Richardson* requires that the jury be instructed that it must unanimously agree on each of the predicate offenses; not that it must identify in the verdict form any specific uncharged narcotics violations it finds as predicate offenses.

The instant case presents different circumstances from those involved in *Garcia-Rivera* relied upon by petitioner. In *Garcia-Rivera*, the jury was asked to determine whether illegal possession of a firearm occurred, "(a) uninterrupted between May 19, 2001 and June 7, 2001; or (b) about a week after the purchase of the firearm, or (c) on June 7, 2001 and you must unanimously agree that the possession occurred during (a) above, or on (b) or (c) above." *Id.* at 790. In reviewing the instructions on appeal, the Ninth Circuit found that the phrasing of the instructions was "fatally ambiguous." *Id.* at 792. The court explained that "[t]he jury could have concluded that they were required to decide unanimously only that possession occurred during *any* of the three times enumerated, not that they had to unanimously agree on which one." *Id.* No such infirmity existed in petitioner's jury instructions, wherein the district court informed the jury that it must unanimously agree on the three predicate offenses. This instruction does not present the ambiguity present in *Garcia-Rivera* and refutes petitioner's contention that "[t]here is simply no way to know what 'violations' each of the jurors relied upon." P's Memo. at 22.

Finally, as previously noted in this order, the court of appeals found the instruction adequate.

### 3. Adequacy of Instruction on Requirement that Jury Unanimously Agree on Each of Five People that Defendant Organized, Managed, or Supervised

In *United States v. Jerome*, the court found plain error and reversed the defendant's CCE conviction where the jury was presented with a variety of persons that the prosecution argued could count in making up the five persons necessary to trigger the statute. 942 F.2d 1328, 1331 (9th Cir. 1991). However, some of the people named by the prosecution could not have been organized by Jerome. *Id.* The court in *Jerome*, therefore, required that the jury be given a specific unanimity instruction — that is, the jurors had to be instructed that they must unanimously agree as to the identity of each of the five people Jerome organized, managed or supervised. *Id.* In *United States v. Garcia*, however, the court explained that such an instruction was required in *Jerome* because the

United States District Court
For the Northern District of California

1  group of people presented to the jury included individuals who could not have been organized or

2  managed by the defendant.  988 F.2d 965, 969 (9th Cir. 1993).  A general unanimity instruction,

3  however, is sufficient unless a genuine risk of juror confusion exists.  *Id.*  In the current case, the

4  jury was instructed that in order to find defendant guilty, it must find "that the defendant committed

5  the offense, together with five or more persons, with all of you agreeing on the five other persons

6  with whom the defendant committed the offenses."  Tr. 6283:4-7.  This instruction was sufficient

7  because the evidence supports a jury finding that defendant supervised all of the individuals who the

8  government argued the defendant had supervised.  Specifically, the government argued:

> We have to prove that he was the organizer, leader, or manager of five or
> more people.  Clearly, in this case - - clearly, you have at least five people.  You
> have Kali Knapp Hidalgo.  You have Kristine Pearce.  You have Kim Pannell. You have
> Kellee Cooper.  You have Ellis Quarshie.  Five people.

Tr.6305:25-6306:4.

## 4.    Inadequacy of Trial and Appellate Counsel

Petitioner claims his trial and appellate counsel were ineffective in arguing the law pertaining

to the CCE charge.  In particular, he faults them for not effectively arguing the requirements of

*Richardson* and not raising *Jerome.*  Petitioner is entitled to effective assistance; that is,

representation that meets an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687.

However, merely because counsel was not successful in making an argument does not show

counsel's argument fell below an objective standard of reasonableness.  Here, counsel did argue the

alleged inadequacy of the unanimity instruction but the court of appeal rejected the argument.

*Ailemen*, 43 Fed.Appx at 84-85.  As to the claim that counsel failed to mention *Jerome*, counsel

could have reasonably concluded that the argument was not a good one in light of the different

factual context from that in *Jerome.*  Even if counsel should have based an argument on *Jerome*, the

failure to do so did not deprive petitioner of a fair trial.  For the reasons discussed above, the result

would not have been different had counsel made the argument petitioner claims they should have

made.  *Strickland*, 466 U.S. at 693.

## C.    Claim III: Defendant Received Ineffective Assistance of Appellate Counsel

1    In Claim III petitioner asserts that his appellate counsel was ineffective because he failed to

2    present, or adequately present, arguments that petitioner was prejudiced by: (1) his wrongful CCE

3    conviction; (2) the extreme bias of the trial judge; (3) prosecutorial misconduct; (4) ineffective

4    assistance of trial counsel; (5) the fact that recorded wiretapped conversations were not translated to

5    English; and (6) denial of defendant's right to testify.

6    Claims of ineffective assistance of appellate counsel are evaluated according to the standard

7    set out in *Strickland*. *Cockett v. Ray*, 333 F.3d 938, 944 (9th Cir. 2003). Petitioner must show that

8    appellate counsel's performance fell below an objective standard of reasonableness and that there is

9    a reasonable probability that, but for counsel's unprofessional errors, petitioner would have prevailed

10   on appeal. *Id.* Each of petitioner's alleged claim of ineffective assistance of appellate counsel in

11   Claim III is examined.

### 1.   Failure to Adequately Present Issues Regarding Petitioner's CCE Conviction

This claim has been addressed above.

### 2.   Failure to Adequately Present the Bias of the Trial Judge

Petitioner acknowledges that the issue of judicial bias was raised on appeal but claims it was

done so inadequately. The Supreme Court stated that courts have "consistently recognized the

important role the trial judge plays in the federal system of criminal justice. '[T]he judge is not a

mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of

determining questions of law.'" *Geders v. United States*, 425 U.S. 80, 86 (1976) (citing *Quercia v.

United States*, 289 U.S. 466, 469 (1933)). *See U.S. v. Allsup*, 566 F.2d 68 (9th Cir. 1977) ("The

district court, of course, is much more than a 'moderator or umpire.'") (citing *Smith v. United States*,

305 F.2d 197, 205 (9th Cir. 1962)). While recognizing that it "occupies a position of 'preeminence

and special persuasiveness' and, accordingly, . . . must avoid the appearance of giving aid to one

party or another," the court may properly participate in the examination of witnesses. *Id.* at 72

(citing *United States v. Trapnell*, 512 F.2d 10, 12 (9th Cir. 1975)). This may be allowed for the

purpose of "clarifying the evidence, controlling the orderly presentation of the evidence, confining

counsel to evidentiary rulings, and preventing undue repetition of testimony." *Id.* (citing *United*

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  *States v. Malcolm*, 475 F.2d 420, 427 (9th Cir. 1973)).  Moreover, a judge's remarks or opinions will

2  not demonstrate bias unless they "display a deep-seated favoritism or antagonism that would make

3  fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).  "[E]xpressions of

4  impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of . . . imperfect

5  men and women" do not establish bias or partiality.  *Id.*  Finally, bias of a judge can "almost never"

6  be demonstrated solely on the basis of a judicial ruling.  *Id.*

7       Petitioner points to no actions by Judge Breyer which evidence "a high degree of favoritism

8  or antagonism as to make fair judgment impossible." *Id.*  Tellingly, as respondent points out, the

9  jury acquitted petitioner on one count and hung on another.  Answer at 21.  Furthermore, the

10  acquittal of petitioner's co-defendant cannot be used to reasonably infer that defendant would have

11  achieved the same result had it not been for Judge Breyer's alleged bias and misconduct.  *See Liteky*,

12  510 U.S. at 555 (bias can "almost never" be demonstrated solely on the basis of a judicial ruling).

13       The court of appeal evaluated the judicial bias claim as follows:

> Ailemen's contention that Judge Breyer exhibited judicial bias is without merit. A
> trial judge is more than an umpire, and may participate in the examination of
> witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the
> orderly presentation of evidence, and prevent undue repetition. A judge's participation
> justifies a new trial only if the record shows actual bias or leaves an abiding
> impression that the jury perceived an appearance of advocacy or partiality.
>
> Judge Breyer's requirement that the defense present offers of proof before calling
> several of its witnesses was justified in light of defense counsels' repeated attempts to
> circumvent the court's ruling by trying to put before the jury evidence of government
> misconduct. Additionally, the record reveals that the judge's sua sponte objections
> were appropriate, his comments during testimony corrected misstatements of law or
> evidence, and his denial of defense requests for continuances were well within his
> discretion.

*Ailemen*, 43 Fed.Appx. at 82-3 (internal citations omitted).

     Petitioner acknowledges that appellate counsel did raise some instances of judicial bias, but

claims his argument was nevertheless deficient.  "Although appellate counsel did present some

illustrations of the bias of the judge, there were a number of rulings and instances [of] judicial

misconduct that were not adequately presented by appellate counsel."  P's Memo. at 38.  The

appellate court decision, however, shows that appellate court did consider allegations of bias of the

type petitioner now complains were not adequately raised.  As the Supreme Court noted in *Jones v.*

1   *Barnes*, 463 U.S. 745 (1983), "There can hardly be any question about the importance of having the

2   appellate advocate examine the record with a view to selecting the most promising issues for review.

3   . . . A brief that raises every colorable issue runs the risk of burying good arguments-those that, in

4   the words of the great advocate John W. Davis, 'go for the jugular,' — in a verbal mound made up of

5   strong and weak contentions." *Id.* at 752-53 (quoting Davis, The Argument of an Appeal, 26 ABAJ

6   895, 897 (1940)). Petitioner has not shown that appellate counsel's representation of him was

7   deficient or prejudicial.

**3.    Failure to Adequately Present Prosecutorial Misconduct**

9       Petitioner complains that the government engaged in "rampant and serious misconduct" but

10  appellate counsel "barely mentioned this pattern of misconduct that was so highly improper and

11  highly prejudicial to defendant." P's Memo. at 49. Petitioner claims that the government's

12  misconduct was motivated by the fact that petitioner had previously been acquitted of drug charges

13  brought against him in a prior trial. The alleged misconduct about which petitioner complains

14  includes the government's payment of $30,000 and other benefits to a drug dealer to assist the DEA

15  in the case against petitioner, the submission of a perjurious application for a wiretap, disparate

16  treatment because defendant is Nigerian and the government's manufacture of the case against

17  petitioner including the disappearance of audio and video tapes and various other acts.

18      Petitioner fails to explain how appellate counsel could have used petitioner's allegation of

19  misconduct to benefit him on appeal. The credibility of witnesses is a factual question generally not

20  reviewable on appeal, the wiretap evidence was suppressed, no evidence shows that petitioner was

21  prosecuted because he is Nigerian and there is no evidence beyond petitioner's allegation that

22  evidence was manufactured. Petitioner's claim that appellate counsel was ineffective for not more

23  rigorously asserting a pattern of prosecutorial misconduct on appeal meets neither prong of the

24  *Strickland* test.

**4.    Failure to Argue Ineffective Assistance of Trial Counsel**

26      In section 4 of Claim 3 petitioner complains that appellate counsel failed to submit claims

27  regarding ineffective assistance of trial counsel to the district court so those claims could be

28  included in the record on appeal. For example, petitioner claims that the record does not show that

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   attorney Rosenthal sat the rear of the court apart from defendant and his co-counsel and that many of

2   the conflicts between the two defense attorneys never came to the attention of the court of appeals.

3   It is unclear whether in this section of his brief petitioner is complaining about the alleged failure of

4   his trial counsel or his appellate counsel to develop a record in the trial court.  However, petitioner

5   has failed to show what prejudicial information was not brought before the court of appeal or why

6   any claimed prejudicial conduct occurring off the court's record cannot be asserted in the instant §

7   2255 motion.

8              **5.       Failure to Raise the Refusal to Translate Tapes**

9          Petitioner claims that his appellate counsel should have claimed error because the trial court

10  did not approve funds for the translation of the suppressed wiretap tapes. However, such a claim

11  would have been without merit.  Ailemen was given the opportunity to provide the trial judge with

12  some evidence that the tapes contained exculpatory material but failed to do so. Ailemen had the

13  tapes since 1994 and presumably spoke the language used on the tapes.  Therefore, if they contain

14  any useful information, he could have cited that information in an offer of proof to the trial court.

15  Or, he could at least point out that favorable information in his present § 2255 motion.  Appellate

16  counsel cannot be fairly criticized for not raising an issue on appeal relating to the translation of the

17  suppressed tapes as there is no evidence that the tapes contain helpful material.  *See Jones*, 463 U.S.

18  at 752-53 (appellate counsel should select the most promising arguments to raise on appeal).

19             **6.       Failure to Argue that Defendant Was Precluded From Testifying**

20         Petitioner finally claims that appellate counsel neglected a "dead-bang" winner by not

21  raising trial counsels' failure to call defendant as a witness.  P's Memo. at 53.  The question of

22  whether this alleged failure constituted ineffective assistance of trial counsel has been discussed

23  above.  Appellate counsel's failure to raise this issue was not deficient because defendant has not

24  shown that he was prejudiced, and, as noted above, the record suggests that he may have voluntarily

25  elected not to testify.

26         **D.      Claim IV: Ineffective Assistance of Trial Counsel**

27

28

United States District Court
For the Northern District of California

1    Petitioner cites seven areas of alleged ineffective assistance of trial counsel which he claims

2    separately and collectively prejudiced his case:[4] (1) trial counsel failed to call material witnesses; (2)

3    trial counsel prevented him from testifying; (3) trial counsel failed to produce pivotal evidence

4    promised to the jury in the opening statement; (4) trial counsel delivered an ineffective closing

5    argument; (5) trial counsel represented him despite conflicting obligations; (6) trial counsel failed to

6    adequately advocate for him during a pre-trial motion to dismiss the indictment; and (7) trial counsel

7    failed to view critical evidence before trial.

8                                **1.    Failure to Call Material Witnesses**

9    Petitioner contends that counsel failed to produce two key witnesses: (1) a Nigerian cultural

10   expert; and (2) a visual/audio tape expert. P's Memo. at 58. This failure, petitioner argues, was

11   exacerbated by the fact that, in the opening statement, counsel had promised to present these

12   witnesses. *Id.* The Nigerian cultural expert would have contradicted respondent's efforts "to paint

13   [petitioner] as a typical large scale drug dealer, paying cash for everything and wearing tailor made

14   clothes." *Id.* at 59. With respect to the loss or destruction of evidence that supposedly would have

15   exculpated petitioner, the tape expert would have explained the technical issues which cause a body

16   wire to malfunction and the probability that such a malfunction would occur, in support of the fact

17   that "a body wire which worked fine for taping all but conversations with the defendant, statistically

18   could not be attributed to chance, i.e. [,] that such a result could only be intentional tampering" by

19   respondent. *Id.* at 60-61. The tape expert, petitioner says, would also have testified that

20   respondent's practices in handling exculpatory evidence violated standard law enforcement practice

21   and "may well have been able to scientifically prove that the tapes were deliberately altered." *Id.* at

22   61. Finally, during closing arguments, respondent "took advantage of . . . counsel's failure to

23   produce the Nigerian cultural expert and the audio/visual tape expert whose appearance was

24

25   _____

     [4] Petitioner asserts that claims for ineffective assistance of trial counsel should be brought in the
26   district court, where an evidentiary hearing may be conducted and a complete record produced.
     Therefore, petitioner asks this court to conduct an evidentiary hearing and to rule, based upon the
27   facts that petitioner believes will be found at the hearing, that trial counsel provided ineffective
     assistance. Petitioner urges that this is necessary because some of the facts supporting a finding of
28   Ineffective assistance of counsel do not appear in the trial record. The court declines to hold such a
     hearing because the evidence in the record and proffered in this motion does not justify a hearing.

United States District Court
For the Northern District of California

1   promised in opening statement." *Id.* at 59.  As petitioner sums up, "[t]he damage caused by this

2   debacle to [petitioner] is incalculable." *Id.* at 59.  However, aside from the mere allegation that such

3   incidents satisfy both prongs of *Strickland*, *id.* at 61, petitioner fails to illustrate how.  Even

4   assuming, *arguendo*, that defense counsel's performance was deficient, petitioner fails to make any

5   showing that, had the witnesses taken the stand, there would have been an adequate foundation for

6   their opinions or that they would have even testified as represented.  No declarations from these

7   allegedly omitted witnesses have been provided.

8       The court has already addressed the issue of the denial of petitioner's right to testify, which

9   forms the basis for petitioner's second ineffective assistance of counsel claim.  As noted above, this

10  court finds that petitioner's failure to testify did not prejudice him, and, in fact, had he testified,

11  harmful evidence that was otherwise inadmissible may have been admitted.

12      In his third ineffective assistance of counsel claim, petitioner asserts that "[l]ittle is more

13  damaging to a criminal defendant than to fail to produce important evidence that has been promised

14  to the jury in an opening statement." *Id.* at 62.  Petitioner asserts that his counsel "primed the jury to

15  hear how and by whom the defendant was framed." *Id.* at 63.  He argues that "without the promised

16  testimony of Agents Silano, Grevacio and AUSA Nandor Vadas" counsel could not show that

17  petitioner had been framed. *Id.* at 65-66.  Instead, counsel produced nothing and "[t]he only

18  reasonable conclusion that the jury could maintain . . . is that [petitioner] was not framed and that

19  this attorney's opening statement was meaningless garbage." *Id.* at 65.  However, as previously

20  mentioned, Mr. Bloom articulated in his closing statement the theory that petitioner had been

21  framed.  Although petitioner claims that additional testimony would have shored up such a theory,

22  petitioner has not shown what the testimony would have been, that it would have been helpful or

23  that it would have had a reasonable likelihood of affecting the result.

24      Petitioner's fourth ineffective assistance of counsel claim asserts that Mr. Rosenthal unfairly

25  usurped 15-20 minutes of Mr. Bloom's time for closing arguments, which negatively affected Mr.

26  Bloom, who "had carefully planned his closing arguments to utilize every minute of alotted [sic]

27  time." *Id.* at 66.  While specifically noting that Mr. Rosenthal's comments during closing were not

28  themselves prejudicial, such an interruption forced Mr. Bloom "to leave out a significant portion of

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB          17

his carefully planned closing argument." *Id.* at 67. However, that one defense counsel argued longer than planned and the other had to argue less does not even survive the first prong of *Strickland*. Albeit frustrating to Mr. Bloom, Mr. Rosenthal's extended closing argument does not illustrate representation that falls below an objective standard of reasonableness. Instead, absent some other showing, Mr. Rosenthal's actions appear to have been in support of petitioner. Moreover, petitioner's assertion that the prejudice to him as a result of Mr. Rosenthal's actions was "astronomical" (*id*) is insufficient to show that absent such actions, it is reasonably probable that the outcome of the proceeding would have been different. Although petitioner attempts to illustrate prejudice, more so than in his other claims, alleging that Mr. Bloom's closing statement was the sole opportunity to "tie all the loose evidentiary/testimony strands together (*id.*), he fails to illustrate that the excluded portion of Mr. Bloom's closing argument was so crucial as to have rebutted respondent's evidence and swayed the jury's decision.

Petitioner also asserts that defense counsel represented him despite a conflict of interest. Petitioner fails to establish that an actual and meaningful conflict even existed, abrogating any need for a *Strickland* evaluation. Petitioner alleges that neither of his attorneys was prepared to take his case to trial, but were forced to do so in order to avoid being held in contempt of court and sent to jail. *Id.* at 70. In support of their decision to go to trial, counsel told petitioner that "they had personal, business and client ethical obligations that outweighed their ethical obligation to [petitioner], and that those ethical obligations would be violated if they were jailed for not proceeding with [petitioner's] trial." *Id.* While such a comment may illustrate that counsel's preparation time was less than what they would have preferred, it does not show an actual conflict of interest. Petitioner's assertion that "his attorneys were required to make a choice advancing other interest [sic] to the detriment of [petitioner]"(*id.* at 70-71) implies that it would have been less detrimental had his attorneys refused to try the case and instead opted to be held in contempt, a conclusion this court is unwilling to reach. Further, neither defense counsel nor petitioner have proffered specific evidence they would have presented if given more time. Merely stating that counsel did not have time to locate and prepare a "tape expert," an expert on "Nigerian financial

United States District Court
For the Northern District of California

1  practices," and "a friend of defendant, who could have testified as to important matters that would

2  have undermined the prosecution's case" is not enough. *See* Bloom Decl. at 2.

3       In his sixth claim, petitioner asserts that defense counsel was ineffective for failing to present

4  critical evidence during a pre-trial motion to dismiss the allegedly tainted indictment. He asserts

5  that "[d]efense counsel knew or should have known that Judge Breyer's determination that the grand

6  jury would have still found sufficient evidence to indict defendant absent the tainted evidence, was

7  fatally flawed and could be successfully challenged." *Id.* at 71. Specifically, defense counsel never

8  informed Judge Breyer that the original grand jury declined to indict petitioner when respondent did

9  not present evidence obtained through an illegal wiretap. *Id.* at 72. Finally, petitioner claims that,

10  had Judge Breyer been informed of the original failure to indict, he "would have sent [respondent]

11  back to the grand jury to attempt to obtain an untainted indictment sanitized of the poisoned

12  evidence." *Id.* Although such a failure by counsel may arguably satisfy the first prong of

13  *Strickland*, an issue which the court does not decide here, petitioner fails to meet the burden of

14  illustrating prejudice. In light of the fact that Judge Breyer allowed respondent to proceed on the

15  second superseding indictment, despite allegations of illegality, one cannot infer that Judge Breyer

16  would have dismissed the indictment had he been aware of the earlier unsuccessful attempt to get an

17  indictment returned.

18       Petitioner in his seventh contention of ineffective assistance of counsel asserts that counsel

19  failed to view critical evidence before trial. However, petitioner's own concessions belie the merit

20  of his claim. First, petitioner notes that Mr. Rosenthal filed motions for a mistrial on grounds that

21  "the failure to view evidence and other earlier documented prejudicial events called into question the

22  fact finding process." *Id.* at 74. However, the judge denied the motion. *Id.* Having later discovered

23  allegedly important evidence, counsel sought to recall witnesses but failed to satisfy a request by

24  Judge Breyer for an offer of proof. *Id.* Such allegations do not illustrate objectively unreasonable

25  behavior by counsel, who attempted to do what they could by filing motions and attempting to

26  introduce evidence upon receipt.

27       In his supplemental brief, petitioner contends that counsels' decision to withdraw the post-

28  trial motion, which alleged government misconduct, constituted ineffective assistance. P's Supp. at

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB                    19

33. Petitioner contends that his "counsel knew this post-trial hearing was the only opportunity remaining . . . to make the record or establish the damage [petitioner] suffered from the preclusion of Silano's testimony and other issues. . . . Yet counsel abruptly terminated the hearing." *Id.* at 28.

Petitioner bears the burden of rebutting the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or 'sound trial strategy.'" Answer at 29 (citing *Strickland*, 466 U.S. at 689). Petitioner offers little to contravene respondent's argument that counsels' actions were tactical and, as such, may not form the basis of an ineffective assistance of counsel claim. As the Ninth Circuit found when it affirmed the conviction, "[t]he defense counsel made a strategic assessment that the district court was inclined to undermine the findings supporting the wiretap suppression ruling and that this could adversely affect [petitioner] on appeal or at a possible retrial." *Ailemen*, 43 Fed.Appx at 83.

Neither does petitioner overcome the hurdle of showing that counsels' decision prejudiced him. In order to prevail, petitioner would need to show that, had his counsel pursued the motion, the trial court would have been likely to grant it. *See Kimmelman v. Morrison*, 477 U.S. 365, 373-74 (1986) (outlining prejudice prong regarding failure to file motion to suppress); *Downs v. Hoyt*, 232 F.3d 1030, 1038 (9th Cir. 2000) (no prejudice from counsel's tactical decision not to seek mistrial where defendant failed to demonstrate it would have been granted). On a motion to evaluate government misconduct, petitioner would need to have shown that "the Government's conduct [was] so grossly shocking and so outrageous as to violate the universal sense of justice," which is considered to be an "extremely high standard." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991). To be successful, petitioner must show that "the government essentially manufactured the crime." *United States v. Bogart*, 783 F.2d 1428, 1436 (9th Cir. 1986). Other than broad sweeping statements that the government manufactured the crime as retribution for petitioner's prior acquittal, petitioner provides no substantiating evidence.

### D.    Claim V: Prosecutorial Misconduct

Petitioner asserts that the "very serious misconduct by the [respondent] deprived him of a fair trial." P's Memo at 77. He cites a panoply of examples that purportedly illustrate respondent's egregious behavior including unlawful dissemination of illegally intercepted wiretap information,

**United States District Court**
For the Northern District of California

1    coercing and providing benefits to witnesses in order to solicit testimony against defendant, and

2    lying by Agent Silano to the prosecutor about a missing tape.

3         In order to prove prosecutorial misconduct, petitioner must show that "the Government's

4    conduct [was] so grossly shocking and so outrageous as to violate the universal sense of justice,"

5    which is an "extremely high standard." *Smith*, 924 F.2d at 897.  Petitioner offers no proffer showing

6    how the alleged unlawful dissemination harmed him.  The use of plea deals and incentives to garner

7    testimony in support of a criminal prosecution is not an unusual practice and hardly amounts to

8    behavior that is "so grossly shocking and so outrageous as to violate the universal sense of justice."

9    *Smith*, 924 F.2d at 897. Finally, petitioner fails to offer persuasive evidence that the government

10   acted in bad faith or that he was truly disadvantaged by the missing witness audio tape.

11        Petitioner argues that respondent's unlawful conduct precluded him from presenting alibi

12   evidence.  Citing *Arizona v. Youngblood*, 488 U.S. 51 (1988), petitioner claims that "[w]hen a

13   defendant is precluded by the government, in bad faith, from presenting alibi evidence, as occurred

14   [sic] in this case, defendant is deprived of his due process rights to a fair trail [sic] and reversal is

15   mandated."  P's Memo at 79; *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("The suppression

16   by the prosecution of evidence favorable to and requested by an accused violates due process where

17   the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the

18   prosecution.").  In support of this argument, petitioner claims that he was prevented from

19   introducing exculpatory evidence contained in: (1) surveillance video tapes generated by petitioner;

20   (2) surveillance video tapes generated by respondent; (3) body wire tapes generated by respondent;

21   and (4) the testimony of Mitchell Dickerson ("Dickerson").  P's Memo at 80.  Respondent allegedly

22   destroyed surveillance video tapes and body wire tapes, which would have established petitioner's

23   actual innocence as to certain counts.  *Id.*  Moreover, petitioner was precluded from calling Agent

24   Silano, who would have testified as to the content of the destroyed tapes.  *Id.*  Finally, witness

25   Dickerson was murdered and petitioner points to the fact that the San Joaquin County Sheriff

26   Department named one of respondent's key witnesses as the primary suspect.  *Id.* at 81.  In sum,

27   petitioner states that "[w]ith no physical evidence connecting petitioner to the crime (other than the

28

**United States District Court**
For the Northern District of California

1    testimony of paid, professional, biased witnesses), the alibi evidence [petitioner] was precluded from

2    presenting was more than critical. It was his defense and the truth." *Id.* at 83.

3        However, petitioner's story is not backed by convincing evidence. Petitioner's own assertion

4    that respondent destroyed tapes in bad faith is not corroborated and is speculative. More

5    importantly, he fails to specify what the exculpatory evidence was. His unsupported theory of

6    Dickerson's murder is insufficient as well to place the blame for his death on respondent.

7        The burden of showing prosecutorial misconduct is high and is one that petitioner fails to

8    carry. Unsupported allegations that respondent prosecuted him, all the while engaging in nefarious

9    behavior, because it sought vindication for a prior acquittal is insufficient to prove that the alleged

10   acts occurred much less in a manner that is "so grossly shocking and so outrageous as to violate the

11   universal sense of justice." *Smith*, 924 F.2d at 897.

12       **E.    Supplement to § 2255 Motion Detailing Alleged Judicial Bias and Misconduct**

13       Petitioner's Supplement to § 2255 Motion focuses on his claim that overwhelming judicial

14   bias and misconduct denied him the right to a fair trial. Among other things, petitioner points to

15   Judge Breyer's alleged "inflexible and stringent" trial schedule, which precluded the appointment of

16   competent counsel. Supp. Memo. at 11. Instead, Judge Breyer was forced to appoint Mr. Rosenthal,

17   who was "lulled with promises of numerous concessions which Judge Breyer later refused to honor."

18   *Id.* Judge Breyer also appointed Mr. Bloom. *Id.* at 12. However, neither attorney, according to

19   petitioner, was prepared for the amount of time and work that the case would require and, when they

20   asked to withdraw from the case, Judge Breyer threatened them with, *inter alia*, disbarment. *Id.*

21   Throughout the proceedings, conflict allegedly persisted between Judge Breyer and defense counsel,

22   who engaged in shouting matches and altercations which, often times, required the immediate

23   removal of the jury. *Id.* at 13-14. In addition, any request by defense counsel for additional time or

24   a continuance to prepare for a witness was summarily denied by the Judge. *Id.* at 14.

25       Petitioner also points to numerous purportedly *ex parte* communications between Judge

26   Breyer and respondent as evidence of judicial bias and misconduct. *Id.* at 19. Petitioner asserts that

27   "[f]ollowing those exparte [sic] hearings, Judge Breyer would often adopt an adamant and hostile

28   position toward defense counsel, denying their requests without articulated reason, and even actually

testifying for government witnesses and openly belittling defense counsel's efforts before the jury."
*Id.* Moreover, petitioner asserts that there were "situations where the judge openly indicated his belief that [petitioner] was guilty, ridiculed [petitioner's] theory of frame-up, and went on to express his sympathy for the prosecution (see sealed hearing of March 8, 1999)." *Id.* at 24.

Finally, petitioner points to judicial bias in the termination of the post-trial misconduct hearing. Although Mr. Rosenthal terminated the hearing, *id.* at 30, petitioner contends that "Judge Breyer was aware of the materiality of this hearing, however he remained resistant to [petitioner's] legitimate need to complete it." *Id.* at 28. Moreover, petitioner alleges that "Judge Breyer was well aware that Rosenthal had been making decisions without [petitioner's] consent." *Id.* at 30.[5]

As evidence of prejudice, petitioner points to the result of his co-defendant's trial, which severed from petitioner's trial when petitioner's original counsel, Mr. Murray, fell critically ill. *Id.* at 9. Noting that his co-defendant relied on the same defense that petitioner presented, petitioner states that "[w]ithin hours of deliberation, the jury found co-defendant not guilty. Their post-acquittal comment was: 'The government witnesses were incredible.'" *Id.*

Although respondent presents an argument on the merits, respondent primarily contends that petitioner's claim for judicial bias and misconduct is untimely and thus not subject to review. Noting that "[a] conviction becomes final whenever the opportunity for direct appeal is exhausted" (Answer at 11 (citing *Clay v. United States*, 537 U.S. 522, 527-28 (2003)), respondent points out that petition for writ of certiorari from the Ninth Circuit Court of Appeals to the United States Supreme Court was denied on February 24, 2003. *Id.* On February 24, 2004, petitioner filed a request for additional time to submit his 28 U.S.C. § 2255 petition, and subsequently filed his petition on or about March 4, 2004. *Id.* It is respondent's assertion that since petitioner's claim for judicial bias and misconduct was not asserted until petitioner filed a supplemental motion on February 4, 2005, it is time-barred.

However, this court finds some merit to petitioner's argument that his supplemental motion did not assert new claims or theories of law, but merely augmented the facts of claims addressed in

---

[5] This description is not meant to be an exhaustive list of petitioner's assertions of judicial bias and misconduct, rather a framework through which the remainder of petitioner's additional claims come into play.

his original petition. Nevertheless, the petitioner's primary complaints of judicial bias and misconduct were raised and discussed in the appellate decision, *United States v. Ailemen*, above. The court does not find that a manifest injustice will result by the court's decision here not to relitigate the factual judicial bias and misconduct allegations the court of appeals considered. *See Polizzi*, 550 F.2d at 1135. The facts added by the supplement do not support vacating the verdict based upon judicial misconduct. Although Judge Breyer was faced with difficult and obstinate counsel, a review of the entire record reveals his concern to maintain and fair and impartial proceeding for defendant.

Petitioner is particularly critical of Judge Breyer's failure to hold a post-trial motion on government misconduct. However, as noted by the court of appeals, the record reveals that this motion was withdrawn by defense counsel for strategic reasons and not because the trial judge refused to hear it. "The defense counsel who withdrew the motion made a strategic assessment that the district court was inclined to undermine the findings supporting the wiretap suppression ruling and that this could adversely affect Ailemen on appeal or at a possible retrial." *Ailemen*, 43 Fed.Appx. at 83.

**F.      Amendment to Defendant's Pending § 2255 Motion**

In his amendment to his § 2255 motion, petitioner "presents" additional facts: that his "APPELLATE LAWYER DID NOT EXERCISE DUE DILIGENCE AND THUS WAS INCOMPETENT." P's Amend. at 1. The essence of the amendment alleges that appellate counsel erred by raising ineffective assistance of counsel claims in petitioner's appeal rather than develop a full record and bring the claim in a § 2255 motion. Petitioner points to evidence, primarily related to the trial judge's alleged inappropriate actions, that appellate counsel allegedly did not have when he filed the appeal. Although appellate counsel did raise ineffective assistance of counsel claims in his appeal, he did not by doing so preclude additional ineffective assistance claims. *Massaro v. United States* holds "that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." 500 U.S. at 504. Although the court elected not to entertain some claims in the current petition because they were raised on appeal, the court has considered in its analysis of petitioner's claims all

United States District Court
For the Northern District of California

1  facts that petitioner uses to support his ineffective assistance of counsel claims including, among

2  other things, trial counsel's declaration,[6] the alleged conflict of interest claim and Judge Breyer's

3  recusal.[7]

4      **G.     Motion for Partial Summary Judgment**

5          On September 4, 2007, following respondent's answer to the 28 U.S.C. § 2255 petition and

6  petitioner's reply and amended reply to respondent's answer, petitioner filed a Motion for Partial

7  Summary Judgment claiming that respondent "admitted all the material facts that are required to

8  resolve the constitutional and statutory claims asserted by [petitioner]."  SJ Mot. at 2.  On November

9  19, 2007, petitioner filed a request that the court grant his theretofore unopposed motion for partial

10  summary judgment, arguing that respondent's "failure to respond is not a result of mistake or

11  oversight; [respondent] cannot reasonably or legally controvert the assertions in the motion for

12  summary judgment just as it could not contradict them in [petitioner's] § 2255 motion."  Request to

13  Grant Defendant's Unopposed Motion for Partial Summary Judgment at 2.

14          On December 7, 2007, respondent filed a brief response.  United States' Response to

15  Petitioner's Request to Grant Summary Judgment.  While not addressing the merits of petitioner's

16  motion, respondent argued that the filing violated this court's August 15, 2007 order and that it has

17  no record of ever being served with petitioner's motion.  Id. at 1-2.  In his Motion for Clarification,

18  filed December 17, 2007, petitioner swears under penalty of perjury that he served respondent with a

19  copy of the motion and claims that respondent "misapprehends and insufficiently appreciates this

20  Court's August 15, 2007 Order."  Id. at 2.  Finally, on April 4, 2008, petitioner filed a renewal

21  motion asking this court to grant his motion.  See Motion Seeking Denial of the Government's

---

23  [6]  Counsel Robert Bloom's declaration is obviously intended to assist petitioner but is very
24  conclusionary and to some extent appears disingenuous.  He claims that "[t]he decision not to call
     defendant as a witness was not a tactical decision.  It was another consequence of having to
25  participate in a trial for which co-counsel and I were not prepared." Bloom Decl. at 1-2. This
     declaration appears inconsistent with the record which suggest that defendant did ot testify because
26  of fear of what would come out in cross-examination. See, for e.g., Tr. 6471:12-24; Ailemen, 43
     Fed.Appx. at 84.

27  [7]  The fact that Judge Breyer recused himself from further involvement in this case does not suggest
28  any wrongdoing on his part but rather a recognition that given the allegations made against him in
     the § 2255 motion another judge should hear the motion.

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB                    25

United States District Court
For the Northern District of California

1  December 7, 2007 Pleading and Renewed Request to Grant Defendant's Unopposed Motion for

2  Partial Summary Judgment.

3      In his motion, petitioner asserts that the court should grant summary judgment as follows: (1)

4  the indictment under which petitioner was prosecuted was illegal; (2) trial counsel and the trial court

5  deprived petitioner of his right to testify; (3) the conflict of interest under which trial counsel

6  operated deprived petitioner of effective assistance of counsel; (4) respondent's destruction of

7  exculpatory evidence violated petitioner's constitutional rights; and (5) termination of the post-trial

8  government misconduct hearing deprived petitioner of his due process rights.

9      Although respondent did not file a separate response to petitioner's summary judgment

10 motion (the court's order of August 15, 2007 contemplated only a response to the government's

11 answer prior to submission on the merits), the court finds the answer, record of the trial and lack of

12 evidence substantiating petitioner's allegations sufficient to justify a denial of both the summary

13 judgment motion and the current § 2255 petition.

14     **H.    Motion for Referral**

15     On June 30, 2008, petitioner filed a renewed motion asking this court to refer this matter to

16 Judge Brazil.  However, the court finds that, given its current ruling, said motion is moot.  This court

17 has reviewed the moving and responding papers, as well as the motion for partial summary

18 judgment, and has rendered a decision on the merits.  To refer the case to Judge Brazil at this time

19 would not advance the interests cited by petitioner, namely the interest of expediting the matter,

20 conserving the court's scarce time and resources, and serving the interest of justice.  Further, there

21 has been no consent to such a referral.

22               **IV.  ORDER**

23     For the foregoing reasons, the court DENIES petitioner's 28 U.S.C. § 2255 motion, DENIES

24 petitioner's motion for partial summary judgment and DENIES petitioner's motion for referral.

25 DATED:        12/29/08

26                                    RONALD M. WHYTE
                                     United States District Judge

27

28

ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PETITIONER'S MOTION FOR REFERRAL
C-04-0823 RMW RELATED TO CR-94-0003 CRB            26

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

Pius Ailemen
84447-001 B
Federal Corrections Institute
P.O. Box 1000
Sandstone, MN 55072

**Counsel for Defendants:**

| | |
|---|---|
| Mark L. Krotoski | Mark.Krotoski@usdoj.gov |
| Timothy J. Lucey | Timothy.Lucey@usdoj.gov |
| Eumi L. Choi | Eumi.Choi@usdoj.gov |
| Kevin V. Ryan | Kevin.Ryan@usdoj.gov |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

Dated:   **12/30/08**                    _____
                                         **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California